BUICK AUTOMOBILE CO. v. WEAVER.

(Court of Civil Appeals of Texas. Dallas. Jan. 17, 1914. Rehearing Denied Feb. 14, 1914.)

1. SALES (§ 87*)—CONSTRUCTION.
Where the seller of an automobile agreed to furnish a competent man who would instruct the purchaser how to operate the machine, and no agreement as to the period of instructions was made, it will be presumed that they were to extend over a reasonable time.
[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 239–247, 1046; Dec. Dig. § 87.*]

2. PRINCIPAL AND AGENT (§ 148*)—SECRET INSTRUCTIONS.
Where the seller of an automobile, who agreed to furnish a competent man to instruct the buyer in the operation of the machine, told his servant, the operator, to instruct the buyer on the journey to buyer's home, and to return after they reached their destination, such instruction is not binding on buyer, not having been disclosed to him.
[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 534–552; Dec. Dig. § 148.*]

3. MASTER AND SERVANT (§ 301*)—LIABILITY OF MASTER FOR TORTS OF SERVANT.
Where the seller of an automobile agreed to furnish a driver to instruct the buyer in its use, the seller is liable for the driver's negligence in operating the machine, even though it belonged to the buyer. for a master is liable for the tortious acts of his servant in the master's service, or in the discharge of his employment, when they are done for the master's business, and for the accomplishment of the object for which a servant is employed, regardless of the instrumentality by which injury is wrought.
[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210–1216; Dec. Dig. § 301.*]

4. MASTER AND SERVANT (§ 327*)—INJURIES CAUSED BY SERVANT—"CONTRIBUTORY NEGLIGENCE"—ASSUMPTION OF RISK.
Where the buyer of an automobile instructed the driver who was furnished by the seller to instruct him in its use to test the speed of the car, the buyer did not assume the risk of injury arising from car's negligent operation, for no contractual relations existed between him and the seller, and his conduct at most amounted to contributory negligence, which is an act or omission of the plaintiff amounting to the want of ordinary care, concurring with the negligent act of the defendant in producing the injury complained of; and hence, in an action by the buyer against the seller for injuries caused by the negligence of the driver of the machine, an instruction on contributory negligence was authorized where the seller set up the defense that the driver was operating the car under the buyer's directions.
[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1266; Dec. Dig. § 327.*
For other definitions, see Words and Phrases, vol. 2, pp. 1540–1547; vol. 8, p. 7617.]

5. APPEAL AND ERROR (§ 731*)—ASSIGNMENTS OF ERROR—SUFFICIENCY.
An assignment of error complaining that the verdict is excessive is insufficient for consideration where the facts on which it was based were not set out in the brief, and the assignment was in the same form made a ground for new trial.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3017–3021; Dec. Dig. § 731.*]

6. EVIDENCE (§ 244*)—ACTIONS.
In a suit by the buyer of an automobile for injuries sustained in an accident occurring while the machine was being driven by the driver furnished by the seller to instruct the buyer in its use, evidence that the driver, after he had taken the car to the buyer's home, stated that he was sent there to instruct the buyer to operate the car, and intended to remain until the buyer learned, and that he had the seller's consent, is admissible to show that no time was fixed for the buyer's instruction; the driver's agency being admitted, but the seller claiming that he was only to give the buyer instructions while taking the machine to the latter's home.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 916–936; Dec. Dig. § 244.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by James H. Weaver against the Buick Automobile Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Harry P. Lawther, of Dallas, for appellant. Muse & Gano, of Dallas, for appellee.

RASBURY, J. Appellee recovered verdict and judgment in the court below against appellant for $5,000 for personal injuries received by appellee when appellee's car operated by appellant's servant was driven into a ditch.

Appellee, in substance, alleged that on the day of the accident he purchased an automobile from appellant, paying therefor $550, on

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes.

condition that appellant would furnish, at its expense, and as part of the consideration of the purchase of the car, a capable person to instruct appellee how to operate, manage, and control same, appellee being wholly ignorant of the construction of the car,' and without knowledge concerning its operation, and that in pursuance of the purchase and agreement appellant placed appellee and his car in charge of one Birdwell, selected by appellant for the purposes stated, and represented by appellant to be thoroughly capable as an instructor, and safe and skillful as an operator. By further appropriate allegations the accident was shown, and serious bodily injuries to appellee resulting therefrom, which were alleged to be the proximate result of the negligence of appellant's said servant, who was in control of the automobile and operating same at the time for appellee's instruction.

After the general denial appellant, in answer to the appellee's petition, by special plea averred that at the time of the purchase of the car it furnished a driver for appellee at his request to drive the car to Wilmer, appellee's home, several miles distant from Dallas, for the purpose of instructing appellee on the way to Wilmer how to operate same, and for such purpose secured the services of said Birdwell, who was to be under the directions and subject to the orders of appellee, and who was not in the employ of appellant, but who was represented to it to be a competent and careful chauffeur. Appellant further charged that the car was safely delivered at Wilmer, and that the accident occurred thereafter, while said Birdwell was testing the speed of the car at the request, and under the directions of appellee, by reason of which appellee assumed the risk of the accident which followed.

The record sustains in substance the following essential facts: Appellant sold appellee a secondhand car for $550, and agreed to deliver the car at appellee's home in Wilmer, a village in Dallas county, distant several miles from the city of Dallas, and to furnish, as part of the consideration of the purchase, a capable and skillful operator to deliver it, and teach appellee how to operate and control same. No exact period of time was agreed upon between appellee and appellant during which appellee was to receive instructions, although the agent of appellant testified that he told Birdwell to deliver the car at Wilmer, and instruct appellee in its use on the way there, and return on the 5 o'clock train, and is corroborated in that respect by Birdwell, although it is not claimed by either that such directions to Birdwell were known by or communicated to appellee. Deitzel, appellant's agent, testified that he agreed to furnish appellee a man to run the car, and to teach him to run it, and furnished Birdwell for that purpose, but never claimed to appellee that Birdwell was to teach him only as far as the delivery of the car at Wilmer. After reaching the agreement for the purchase of the car, appellee started for Wilmer, with Birdwell driving the car. Before getting without the city limits, one of the tires was punctured, and they returned to Dallas. The next morning the start was made about 11 o'clock. On reaching Wilmer, appellee and Birdwell halted at the home of appellee's brother for dinner. On the way to Wilmer from Dallas appellee' says Birdwell operated the car. Birdwell says, after crossing the Trinity river south of Dallas, appellee operated it. What occurred after dinner with appellee's brother was testified to by appellee, W. S. Little, W. T. Whisnant, and Birdwell. The first three are in substantial accord. Birdwell does not agree with any of them. The verdict of the jury authorizes our adoption of the theory of the accident testified to by the first three, which is as follows: After dinner appellee suggested that he and Birdwell go to another brother's, a mile distant from Wilmer. Birdwell assented, remarking that on the way he would instruct appellee how to operate the car. This he did, sitting beside appellee while he was running the car, telling him what to do, and explaining the various parts of the machine and their uses. This was the first instruction given appellee. This journey was made, and the parties returned to Wilmer. On the return appellee's "little" brother asked for a ride; Birdwell urging that they give him one. Those named then started on the second trip, with Birdwell beside appellee on the front seat instructing him how to operate the car. Before leaving Wilmer, the witnesses Little and Whisnant were taken in the car. About one-half mile from Wilmer the road over which the parties were driving turns sharply, and, before resuming its original direction, forms an elbow. On reaching this place, Birdwell cautioned appellee to use care in making the turn, taking hold of the steering wheel at the time, and assisting appellee. Likewise, at the next turn. From the point where the elbow forms, the party continued for about one-half mile to the end of the macadamized road. Here appellee, who was operating the car, told Birdwell that he could not turn the car in order that they might resume their return journey. Thereupon Birdwell changed seats with appellee, took charge of the car, saying he would show appellee how to operate it. He turned the car about, and started in on the return journey, and in a short while had the car going at full speed. About the speed of the car there seems to be no dispute; Birdwell admitting 35 or 40 miles an hour, the other witnesses placing it faster. From where Birdwell started on the return journey, the bend in the road is plainly visible, but, after starting, made no attempt to check his speed before reaching the turn in the road. When he attempted to pass in and through the curve, the car turned a somersault, depositing the oc-

cupants in a ditch by the side of the road; the car falling upon appellee, Little, and the boy. After the parties had extricated themselves from the car, Birdwell ran up, inquiring if they were hurt, declaring he was at fault, and ought to be punished. Birdwell's theory of the accident was in direct conflict with that of the other witnesses; he having testified on that point that on the way out appellee directed him that on the return trip he should drive the car, and show his friends how the car could run and its good features, that he did so, and was running the car 35 or 40 miles an hour, but slackened the speed to 15 or 20 miles an hour before reaching the turn in the road, and then he could have gone in and through the turn safely, but for the fact that the road was improperly graded. Any other reference to the facts made necessary will be set out under the particular assignment of error calling therefor.

[1, 2] We will consider first the assignments under which it is asserted that the court should have charged the jury that it was necessary that the minds of appellant and appellee should have met in every essential particular concerning the agreement to furnish appellee an instructor before such agreement was binding on either. We do not think the charge should have been given. We conclude from the testimony that it cannot intelligently be denied that it was mutually agreed that appellee should have an instructor. No witness for appellant denies that fact; but it is admitted frankly by appellant's manager. It is true that no witness attempts to say over what period of time such instructions should extend. The legal presumption in such cases, however, is that such instructions shall continue for a reasonable time, having in view the difficulty or ease with which a person of ordinary intelligence could learn to operate an automobile. While appellant's manager did testify that he told Birdwell to instruct appellee on the way to Wilmer, and that Birdwell well corroborates him in the statement, it is not claimed by either that such instructions were more than private instructions not communicated to appellee, and by which he cannot be bound.

[3] The refusal of the court below to peremptorily instruct a verdict for appellant is also assigned as error, on the ground that, the title of the automobile being in appellee, Birdwell was subject to his control and direction, and hence the servant of appellee, for whose negligence appellant was not responsible. We think the contention unsound. It is well settled that the master is liable for the tortious acts of his servant done while in the master's service, or in the discharge of his employment, or when the acts claimed to be tortious are done in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed. Railway v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep.

902; Cooper v. Knight, 147 S. W. 349. The instrumentality by or through which the injury is wrought or the negligence committed is immaterial. The manifold methods of avoiding the just liability fixed upon the master for the negligence of his servant under such doctrine are too obvious for illustration.

[4] The next assignment we will consider complains of the action of the court in instructing the jury that appellee could not recover if by his own negligence he contributed to his injuries. The point urged is that, since appellant did not plead that appellee was guilty of contributory negligence, the charge placed upon appellant a burden it did not assume. Appellant, by special plea, among other matters alleged as a defense to the suit "that the accident occurred while Birdwell was testing the speed of the car at the request and under the directions of appellee." The evidence is undisputed that the car was going the limit of its speed, and Birdwell testified that he did so at the request of appellee, who wanted to show his friends the car's good features, and how it could run. A favored definition of contributory negligence is that it is such an act or omission of the plaintiff, amounting to a want of ordinary care and prudence, as, concurring or co-operating with the negligent act of the defendant, is the proximate cause or occasion of the injuries complained of. Texas Midland v. Monroe, 155 S. W. 973. Assuming that the testimony raised the issue set out in the pleading, then in our opinion it was, if anything, contributory negligence, and not assumed risk, as urged by appellant in its fifth assignment of error. Routledge v. Rambler Automobile Co., 95 S. W. 749. The relation of master and servant not existing between appellee and appellant, neither any contractual relations, and appellee further being inexperienced and without knowledge in the operation of automobiles, a request that appellant's driver test the speed of the car, if held to be assumed risk, would be to say that appellee assumed the risk of the driver's negligence, since it must appear that he had knowledge of his negligence at the time he assumed it in order to apply that doctrine. It has been said that one who subjects himself to a known danger arising from another's negligence would be none the less guilty of contributory negligence. G. H. & S. A. Ry. Co. v. Patillo, 45 Tex. Civ. App. 572, 101 S. W. 492; Texas Midland v. Monroe, 155 S. W. 973. Thus it follows that the facts pleaded, and which the pleader denominates appellant's plea of assumed risk, constitute in law a plea of contributory negligence, and the court's charge upon that issue was correct.

[5] The sixth assignment of error is that "the verdict of the jury is excessive." In like manner is this ground of error set out in the motion for new trial. The assignment is insufficient, since, the excessiveness or not of a verdict being a question of fact, it was

the duty of appellant to set out in his motion for new trial the facts supporting his claim of excessiveness, and his duty as well to subjoin to his proposition in his brief said facts by proper statement in order that we might consider same. We are not compelled to examine the entire statement of facts in order to determine whether a verdict is excessive. M., K. & T. Ry. Co. v. Fesmire, 150 S. W. 201.

[6] The seventh assignment of error complains of the action of the court in permitting James and John Weaver to testify in effect that, after reaching Wilmer, Birdwell, upon being asked if he wanted to return to Dallas that night, replied that he did not, since he was sent there to instruct appellee to operate the car, and intended to remain until he did learn him, and that he had the appellant company's consent to do so. The objection is that the evidence tends to prove agency by the declarations of the agent. We think the assignment should be overruled. The evidence was not necessary to prove Birdwell's agency, since it was not denied, but was admissible, in our opinion, as tending to establish the claim that appellee was to be taught to operate same, and that the matter of time was not agreed upon between the parties, or considered by them.

The judgment is affirmed.