## TEXAS POWER & LIGHT CO. v. DENSON.
### No. 7667.

Court of Civil Appeals of Texas. Austin.
Dec. 23, 1931.

Rehearing Denied Feb. 3, 1932.

Wood & Wood and Dan Moody, all of Austin, for appellant.

Chambers & Gillis, of Cameron, and Winbourn Pearce, of Temple, for appellee.

BAUGH, J.

Suit by appellee against appellant for damages to his car and for personal injuries to his wife, resulting from a collision on September 22, 1931, on the streets of Cameron with a car driven by an employee of appellant. The car driven by the employee, Joe Deaton, was his own property. Trial was to a jury on special issues, and judgment rendered in favor of appellee for $6,683.35; hence this appeal.

Appellant's defense was, among other things, that said employee was using his own car for his own convenience and comfort; that it was not necessary in the performance of his duties; that it was being used by him without authority of his employer, either express or implied, but contrary to the instructions of his employer; that in so using it he was not acting within the scope of his employment at the time of the collision; and that therefore appellant is not liable. No complaint is made as to the findings of negligence of said employee nor of the amount of the damages assessed. The controlling issue presented relates to the defenses urged.

There is little controversy over the facts. They were substantially as follows: Deaton was sent by the Dallas office to the Cameron office of appellant some ten days before the collision as local salesman of electrical accessories, such as washing machines, radios, electric irons, etc. He was under complete control of appellant's manager at Cameron. His duties were to solicit orders for, demonstrate, and effect sales of, electrical equipment. The usual and customary method of discharging his duties was for him to go about on foot; and, when equipment was to be taken from appellant's place of business, it was customarily delivered by another employee, either alone or aided by Deaton, on a small truck furnished by appellant for that purpose. There was evidence, however, that on some occasions Deaton had delivered or taken up equipment, placed in residences for demonstration, in his own car. A few days after beginning his employment, Deaton purchased individually the car in question. Appellant paid no part of the expense of operating it, and exercised no control over it. A few days before the collision, the manager of appellant saw Deaton driving it, and suggested to him that he would effect more sales by not using his car in his work, and in effect requested him not to so use it. The manager testified that in dealing with his employees such a request amounted to, was intended as, and understood by them to be, an

instruction. Both the manager and Deaton testified' that the use of said car was not necessary nor customarily used in the performance of the duties of his employment. There was testimony, however, that on some occasions such use by Deaton of his own car was beneficial to appellant and reasonable in the discharge of his duties.

On the óccasion in question, appellant had delivered on its truck an electric washing machine at a private residence in Cameron, about 1½ miles from appellant's place of business. Deaton went out in his own car to demonstrate it. He returned to the downtown office in his car to procure a connecting cord and then to the residence, where he demonstrated the machine, effected a sale thereof, procured the purchaser's check, and was on his way back to appellant's office when the collision occurred. Appellant's manager testified that he did not know that Deaton was using his own car at the time.

Except in the use of his own car, there is no question but that Deaton was, at the time of the collision, engaged in the course of his employment and subject to the complete control, direction, and authority of his master. Though there was sufficient evidence from which the jury might have inferred that Deaton was, at the time of the collision, using his- own car with the implied assent of his employer, that issue was not submitted to the jury. But there was no evidence that he was doing so with any express authority from the master. The evidence in that respect was to the contrary.

It is needless for us to discuss the liability generally of the master for the torts of his servant committed while acting within the scope of his employment. The real issue here presented is whether the master is· liable for such torts where the servant, in performing the duties for which he was employed, uses means not authorized by the master, but which he was instructed by the master not to use. The general rule laid down by the United States Supreme Court as early as 1852, as to the master's liability for the torts of the servant, is: "If it be done in the course of his employment, the master is liable; and it makes no difference that the master did not authorize, or even know of the servant's act or neglect, or even if he disapproved or forbade it, he is equally liable, if the act be done in the course of his servant's employment." Philadelphia & 'R. R. Co. v. Derby, 14 How. 468, 486, 14 L. Ed. 502; Singer Mfg. Co. v. Rahn, 132 U. S. 518, 10 S. Ct. 175, 33 L. Ed. 440.

This rule appears to have been uniformly followed throughout this country. See 39 C. J. 1285, and numerous cases there cited. In applying it in this state, Judge Gaines in I. & G. N. Ry. Co. v. Anderson, 82 Tex. 520, 17 S. W. 1039, 1040, 27 Am. St. Rep. 902, used the following language: "But the act must be done within the scope of the general authority of the servant. It must be done in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed. For the mode in which the servant performs the duty he is engaged to perform, if wrongful, ·and to the injury of another, the master is liable, although he may have expressly forbidden the particular act. But whether the act in question can be implied from the general authority. conferred upon the servant must, in general, depend upon the nature of the service he is engaged to perform, and the circumstances of the particular case."

Nor has such rule been confined to the acts of the servant performed upon the premises of the master. Burnett v. Oechsner, 92 Tex. 588, 50 S. W. 562, 71 Am. St. Rep. 880.

When applied to the acts of the servant in using his own automobile in the discharge of the duties of the master, many of the courts which subscribe to the foregoing general rule have varied it to the extent that, unless it be shown that the use by the servant of his own car was expressly or impliedly authorized by the master, the master cannot be held liable for torts of the servant when so committed. The great weight of authority in other jurisdictions is clearly to that effect. 42 C. J. 1129; Labatt's Master & Servant (6th Ed.) vol. 6, p. 6888; Huddy, Cyc. of Automobile Law (9th Ed. 1931), vol. 7–8, p. 348; Kennedy v. Union Charcoal & Chem. ·Co., 156 Tenn. 666, 4 S.W.(2d) 354 (in which numerous cases are reviewed), 57 A. L. R. 733, and cases annotated; McCaughen v. M. P. Ry. Co. (Mo. App.) 274 S. W. 97; Khoury v. Edison Electric Il. Co., 265 Mass. 236, 164 N. E. 77, 60 A. L. R. 1159, and annotated cases; Seaboyer v. Davis, 244 Mass. 122, 138 N. E. 538; McCarthy v. Souther, 83 N. H. 29, 137 A. 445; Goldsmith v. Chesebrough, 138 Md. 1, 113 A. 285; O'Loughlin v. Mackey, 182 App. Div. 637, 169 N. Y. S. 835; St. Louis, I. M. & S. R. Co. v. Robinson, 117 Ark. 37, 173 S. W. 822; Ramp v. Osborne, 115 Or. 672, 239 P. 112; Hughes v. W. U. Tel. Corp. (Iowa) 236 N. W. 8. Most of these decisions, however, are predicated upon the fact that the master, at the time of the servant's act complained of, had no right of control over the vehicle belonging to, and being used by, the servant in the discharge of his duties.

 The test of liability of the master is, not whether the master was at the time of the act complained of in fact exercising control and direction over the conduct of the servant, but whether he had the right and authority to do so. The evidence clearly shows in the instant case that the master had complete control over the manner in which Deaton performed his duties and authority to exercise that control both as to the time and the manner in which he was perform-

ing his duties on the day in question. It had the right, not only to direct his services, i. e., the demonstration and sale of the washing machines to the particular individual in question, but to control manner in which he should go to and come from the residence of the purchaser. The purpose and general scope of his employment was to effect a sale of the equipment. The manner in which he reached the prospective purchaser's home, whether on foot or in a car, and, if in a car, whether on the truck owned by appellant or in the car owned by the servant, was only incidental to, and a mode or manner of discharge of, the duties for which he was employed.

But whether or not the use of his own car in the premises brings him within the modification of the general rule of the scope of his employment as is apparently made by the authorities in other states above cited, we think the Texas courts have so applied the rule announced to servants operating their own automobiles in the service of the master as to clearly control the issue here presented. In Buick Automobile Co. v. Weaver (Tex. Civ. App.) 163 S. W. 594, 596 (writ ref.), where the servant was acting within the general scope of his authority in instructing a purchaser how to drive a car, though the car had already been sold to and was owned by the purchaser, the court applied the rule announced by Judge Gaines in Ry. Co. v. Anderson, supra, and held that: "The instrumentality by or through which the injury is wrought or the negligence committed is immaterial." And in Guitar v. Wheeler, 36 S.W.(2d) 325, 331 (writ dis.), the El Paso Court of Civil Appeals, in a case where the servant was driving his own car in the discharge of his duties (whether with the knowledge and consent of his employer is not shown), used the following language: "We think it immaterial under the facts here that the auotmobile, driven by Tidwell at the time of the accident, belonged to Tidwell, if he was using it in the performance of a duty he owed his employers. The ownership of the automobile is simply an incident in the performance of his service; the thing done by the servant in the performance of a duty to his master is the ultimate act, and not the instrument with which he performs the duty that makes the master liable."

While both the appellant's manager and Deaton testified that the use by Deaton of his automobile was not necessary in the performance of his duties, the facts are that in the instant case the customer lived about a mile and a half from appellant's place of business; and the employee made two round-trips between these places in the discharge of his duties on the morning in question, necessitating travel of at least six miles. Clearly under these circumstances the employee used means of travel beneficial to the master. While the use of means beneficial to the master is not a conclusive test as to the scope of the servant's employment, when no means of transportation, where transportation is reasonably required, is afforded, by the master, we think the servant is entitled, within the scope of his employment, to use the usual and customary method of transportation available to accomplish the purpose for which he was employed. The almost universal method of transportation now used in such cases is by automobile.

Under the Texas cases above cited, the nature of Deaton's duties, the methods used by him at the time, and the right and authority of appellant to exercise complete control over both his work and the time and manner in which he should accomplish it, we conclude that Deaton was acting within the scope of his employment at the time of the collision; and that the use of his own car was merely a mode of discharging the duties for which he was employed, and was but incidental thereto.

Finding no error in the record, the judgment of the trial court will be affirmed.

Affirmed.