TUCKER *v.* HOME STORES, INC. (two cases).

*(Nashville,* December Term, 1935.)

Opinion filed March 10, 1936.

WHITAKER & WHITAKER, of Chattanooga, for plaintiffs, J. L. Tucker and Sam Tucker.

SIZER, CHAMBLISS & KEFAUVER, of Chattanooga, for defendant, Home Stores, Inc.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

Plaintiffs in error, J. L. and Sam Tucker, sued L. W. Wright and Home Stores, Inc., for damages on account of personal injuries sustained by them when an automobile owned and operated by Wright was caused to collide with a wagon on which they were riding. On the trial of the cases, at the conclusion of plaintiff's proof, a motion was made and granted for a directed verdict in favor of the Home Stores, Inc., and the suits were dismissed as to it. A verdict was returned against Wright in favor of Sam Tucker for $1,000 and in favor of J. L. Tucker for $250. Wright did not appeal from these judgments, but plaintiffs appealed to the Court of Appeals from the action of the trial judge in directing a verdict in favor of the Home Stores, Inc. The Court of Appeals affirmed the judgment of the trial court, and plaintiffs filed their petition for *certiorari* and assigned errors. *Certiorari* was granted, and argument has been heard by this court.

The only question involved on this appeal is whether or not the Home Stores, Inc., is responsible for Wright's negligence in causing the accident complained of.

Home Stores, Inc., owns and operates a number of

"cash and carry" grocery stores in the city of Chattanooga and its suburbs. Wright was manager of the store at Thirty-Sixth street and Rossville boulevard. He was the only employe in the store, except that on Friday afternoons and Saturdays, on account of the rush of business, he was furnished an assistant. The bulk of the trade of this store came from people working for the various industries located in the vicinity, and they would use their pay checks in trading for groceries. It was one of the duties of Wright, as manager of the store, to keep sufficient change on hand, this being necessary to the proper conduct of the business. He had no instructions, however, to go to the bank at Rossville, or to any bank, and cash checks taken in trade. The store was equipped with a telephone, and the company maintained a number of service trucks that operated from their main office to supply its various stores with anything they needed. Wright knew this fact.

On Friday afternoon, June 30, 1933, and on Saturday morning, July 1, Wright took in a great many pay checks, and the change ran short. The bank at Rossville was about one and a half miles distant from this store. The means of public transportation from the store to the bank was a street car line, about one block from the store, and taxi lines with no regular schedules. Wright had his privately owned automobile out in front of the store, and he took the pay checks on hand to go and get them cashed at the bank at Rossville, in order to obtain the necessary change for the proper operation of the business of the store. According to the testimony of Wright, the trip to Rossville was of a dual nature, or, as he says, "It was kind of a mixed proposition. I went to get some checks cashed and I went to attend to some per-

sonal things of my own." "Q. What was the main object of your trip? A. Well, I had to have the change and also I had to have the other things. Q. Well, did you have to have the change in order to properly manage and operate that store on that day? A. Yes, sir." The accident complained of happened while Wright was returning from Rossville to the store. He had cashed the checks and had the change with him. He had, also, attended to his personal business.

The use of the automobile by Wright in going to the bank for change was not authorized by the company, either expressly or impliedly. So far as the record discloses, none of the officers of the company knew that Wright owned an automobile. While Wright had gone to the bank on several prior occasions in his automobile for change, it is not shown that the company had any knowledge of such fact.

The rule, supported by the great weight of authority, is that unless it be shown that the use by the servant of his own automobile was expressly or impliedly authorized by the master, the master cannot be held liable for the torts of the servant committed in the use of the automobile. *Kennedy* v. *Union Charcoal & Chem. Co.*, 156 Tenn., 666, 4 S. W. (2d), 354, 57 A. L. R. 733; 42 C. J., 1128; 18 R. C. L., 781; 6 R. C. L. Supp., 1084.

The burden of proof was upon plaintiffs to show that Wright operated the automobile, at the time of the accident, with the knowledge, consent, or authority, express or implied, of the company. *McCaughen* v. *Missouri Pac. R. Co.* (Mo. App.), 274 S. W. 97. In *Goldsmith* v. *Chesebrough*, 138 Md., 1, 113 A., 285, cited with approval by this court in *Kennedy* v. *Union Charcoal & Chem. Co., supra,* the evidence was held so indefinite, un-

certain, and lacking in probative force that it was not legally sufficient to go to the jury as tending to show that the use of the automobile was expressly or impliedly authorized by the employer, and it was held that an instruction that the case be withdrawn from the jury should have been granted.

Counsel for plaintiffs rely upon *Texas Power & Light Co.* v. *Denson,* 45 S. W. (2d), 1001; *Buick Automobile Co.* v. *Weaver,* 163 S. W., 594, and *Guitar* v. *Wheeler,* 36 S. W. (2d), 325, being cases decided by the Texas Court of Civil Appeals. These decisions, however, are not in accord with the great weight of authority with respect to the rule that it must be shown that the use by the servant of his own car was expressly or impliedly authorized by the master, before the master can be held liable for the negligence of the servant in the operation of the car. The fact that the Texas rule is not in harmony with that prevailing in a majority of the other jurisdictions is recognized in *Texas Power & Light Co.* v. *Denson, supra.*

We think the trial court was not in error in granting the company's motion for a directed verdict in its favor. The action of the Court of Appeals in affirming the judgment of the trial court must be affirmed by this court.