NATIONAL LIFE & ACCIDENT INS. CO. *v.* MORRISON.

(*Nashville*, December Term, 1941.)

Opinion filed February 28, 1942.

EARL KING, EMMETT W. BRADEN, and CHARLES G. MORGAN, all of Memphis, for plaintiff in error.

JOHN L. EXBY and WILLIAM GERBER, both of Memphis, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is an action for damages for personal injuries resulting from a collision on the street in Memphis between an automobile driven by S. F. Darby, who was an agent of the Insurance Company, and Morrison, at the time connected with the City police force. The case has been twice tried. At the close of the first trial the trial Judge granted a motion for a directed verdict and dismissed the suit as to the Insurance Company. The Court of Appeals affirmed. This Court, in an opinion by Special Justice E. J. SMITH, 179 Tenn., 18, 162 S. W.

(2d), 497, reversed and the case was remanded for submission to the jury of the issue of fact as to whether or not the proven circumstances and conditions of the employment of Darby as an agent of the Company in the solicitation of its business, and the collection of premiums, established, or afforded reasonable ground for an inference, that the Company exercised control over the physical conduct and movements of the agent in the performance of his duties, particularly in the matter of the use of an automobile, the instrumentality in use at the time of the accident.

The retrial resulted in a verdict for $35,000, a *remittitur* of $10,000, and a judgment for $25,000, which was approved by the trial Judge and affirmed by the Court of Appeals, that Court, finding the evidence substantially the same as that produced on the former trial, holding that the opinion of this Court on the former appeal was the law of the case, by which it felt bound. We granted *certiorari*, by reason of the importance of the case, and particularly in response to the insistence that a conflict appeared between the decision in this case and in the case of *American Nat. Ins. Co.* v. *Poole*, decided October 26, 1940, by the Court of Appeals, Eastern Section, opinion by McAmis, J., 24 Tenn. App., 596, 148 S. W. (2d), 14, in which this Court denied *certiorari* January 11, 1941, and also the holding of this Court in *Income Life Ins. Co.* v. *Mitchell*, 168 Tenn., 471, 472, 79 S. W. (2d), 572, 575.

Considering first the question of alleged conflict, which is pertinent to the theory of independent contractor, hereinafter discussed, upon a review of the opinions in these cases, in both of which the insurance agent was held to be an independent contractor, which is and was an insistence made for the Insurance Company in this

case, it appears that they are to be distinguished from the instant case on their facts in several determinative respects. In neither was it shown that the Company stipulated for, exacted or authorized, expressly or by implication, the use of a particular instrumentality, to-wit, an automobile, by the agent in the discharge of his duties, to this extent reserving and exercising the right to control the manner and means of performance of the agent's contractual duties, which it is alleged was shown in the instant case, and which is an issue directed by this Court to be submitted to the jury on remand.

In the *Mitchell* case we said that the Company "exercised no supervision and gave no direction as to whom to see or where to be seen, how to be urged or induced; whether Mitchell should walk, as he commonly did, or ride, as he did this fatal day," etc. In the instant case it is insisted that the evidence shows, by direct testimony and fair inference, that the Company gave direction to the agent as to whom to see and where to be seen, in the matter of collection of this premium, which it is said he was proceeding to collect at the time of the accident; and, also, with particular application to the theory of control of his physical movements, that the Company here exercised control as to whether Darby should walk or ride in an automobile.

And in the *Poole* case, *supra*, where the agent of the Insurance Company was in charge of a specific territorial debit, as was Mitchell in that case, it is said in the opinion that, "the evidence is undisputed that Booth [the agent] was free to employ his own methods . . . and *determine his mode of travel.*" (Italics ours.) Further, that "it is not shown that he was ever furnished a prospect's name by defendant or that he was directed, in any manner, when or how prospects could best be

interviewed.'' It is the theory of plaintiff here that Darby was furnished these parties' names on whom he was proceeding to call, etc. The opinion in the *Poole* case stresses the similarity of that case to the *Mitchell* case and quotes from that opinion the passage we have above quoted from the *Mitchell* case. In both of these cases, in denying liability of the employer Company, the Courts stressed the feature of fact which distinguishes them from this case, namely, that the Company neither reserved nor exercised any control over the physical conduct or movements of the agents, particularly in the matter relied on here, of the use of an automobile in the performance of their duties. In this connection, counsel for petitioner cite and rely on *American Nat. Ins. Co.* v. *Denke*, 128 Tex., 229, 95 S. W. (2d), 370, 372, 107 A. L. R., 409, but that case is also distinguishable on its facts in the particulars just considered. We quote from that opinion this pertinent statement: ''There was nothing in the contract, either actually, or as construed by the parties, which in any way sought to control Saunders in his physical movements while doing his work, or directing that he should or should not travel by automobile, street car, cab, or on foot or otherwise.''

As has been indicated, the question of the liability of the Company in this tort action turns on (1) the relationship of Darby to the Company, and, (2) specifically, whether or not (a) he was at the time engaged in performing a contractual service for the Company and (b) was using the automobile, the instrumentality from the use of which the tort resulted, under the instructions, or at the instance of, or by the authority, express or implied, of the Company.

In the first place, we think it not debatable that the general relationship of Darby to the Company was that

of an agent, with the general duty of soliciting insurance and making collections therefor, and that this agency engagement was not limited to any particular debit, or confined to any specific territory, or to any particular class of insurance. This relationship was, as we have said, more strictly that of principal and agent, than that of master and servant. This distinction in terminology is one now well recognized, although perhaps without important significance affecting liability for torts based on the authorized use of an automobile. It is noted by Mr. Justice McKinney, in his opinion in *Kennedy* v. *Union Charcoal & Chemical Co.*, 156 Tenn., 666, at page 668, 4 S. W. (2d), 354, at page 354, 57 A. L. R., 733, from which we quote:

"The difference between an agent and a servant is fully discussed in 2 Corpus Juris, 423. In a note at the bottom of the page it is said:

" 'Agency, properly speaking, relates to commercial or business transactions, while service has reference to actions upon or concerning things. Service deals with matters of manual or mechanical execution. An agent is the more direct representative of the master, and clothed with higher powers and broader discretion than a servant. Mechem, Agency, 1, 2. The terms "agent" and "servant" are so frequently used interchangeably in the adjudications that the reader is apt to conclude they mean the same thing. We think, however, that the history of the law bearing on this subject shows that there is a difference between them. Agency, in its legal sense, always imports commercial dealings between two parties by and through the medium of another. An agent negotiates or treats with third parties in commercial matters for another. *Kingan & Co.* v. *Silvers*, 14 Ind. App., 80, 37 N. E., 413, 416.' "

■ And further, in this connection, we quote from the leading case of *American Nat. Ins. Co.* v. *Denke*, 128 Tex., 229, 95 S. W. (2d), at page 372, 107 A. L. R., 409, an excerpt which includes a quotation of Section 250 of the Restatement of Law of Agency, which is cited with approval in the opinion of Special Justice SMITH, on the former hearing of the instant case:

"Without undertaking to comment upon the various terms of the written contract between the insurance company and Saunders, we think we may safely and confidently say that it is undoubtedly one of agency. Eliminating all matters of definition and distinction, it is obvious we think that Saunders was in common and everyday parlance an 'insurance agent,' and, as such, plaintiff in error was his principal. That he was not a 'servant,' within the usual significance of that term, seems to be obvious. See *American Savings Life Insurance Company* v. *Riplinger*, 249 Ky., 8, 60 S. W. (2d), 115. Therefore, in considering the liability of plaintiff in error for the tortious acts of Saunders, we must apply the principle governing in such matters where the relationship of principal and agent is involved, and as particularly applicable in cases of this special class.

"In section 250 of the Restatement of Law of Agency by the American Law Institute, it is said:

" 'Except as stated in section 251, a principal is not liable for physical harm caused by the negligent physical conduct of an agent, who is not a servant, during the performance of the principal's business, unless the act was done in the manner directed or authorized by the principal or the result was one intended or authorized by the principal.

" 'Comment:

" ' (a) A principal employing another to achieve a result but not controlling nor having the right to control the details of his *physical movements* is not responsible for incidental negligence while such person is conducting the authorized transaction. Thus, the principal is not liable for the negligent physical conduct of an attorney, a broker, a factor, or a rental agent, as such. In their movements and their control of physical forces, they are in the relation of independent contractors to the principal. It is only when to the relationship of principal and agent there is added that right to control *physical details as to the manner of performance* which is characteristic of the relationship of master and servant, that the person in whose service the act is done becomes subject to liability for the physical conduct of the actor.' (Italics ours.) "

We shall presently consider whether or not the facts of this case bring it within the statement of the rule in the above quotation from Restatement of Law of Agency, which declares liability "only when to the relationship of principal and agent there is added that right to control physical details as to the manner of performance [here the use of a given instrumentality] which is characteristic of the relationship of master and servant."

■ Next, a primary condition of liability, whether the relationship be termed that of master and servant, or principal and agent, is, of course, that the servant or agent shall have been on the superior's business, acting within the scope of his employment. It is urged by petitioner here that the proven facts in this present trial do not establish this essential of liability. This was quite clearly established on the former trial when the agent, Darby, testified. But Darby was not used as a witness on the last trial, the case now before us.

We are not impressed with this contention made for petitioner. It was rejected by the jury, the trial Judge, and the Court of Appeals. We thus have a concurrent finding—this particular issue being an essential of the finding of liability—by which this Court is bound, if there be any material evidence to support it. The Court of Appeals, after commenting on the failure of Darby to testify on this trial, and holding it to be unnecessary to pass on the insistence that the rule be applied which recognizes a presumption that the testimony of an available witness not introduced by a party to whom the witness is presumably favorable, by reason of employment or other connection, would have given testimony unfavorable to that party, thus proceeded:

"In the present case, as in the former case, it was shown that Darby had a past due premium to collect from a policyholder who resided a short distance from where this accident occurred. It is also shown that he had visited the home of the policyholder at a former date, for the purpose of collecting this premium; that he was then told by the wife of the policyholder that her husband was not at home and that he would be prepared to meet the payment of the premium at a later date. It was shown that Darby had this premium for collection. It was not in the vicinity in the City of Memphis where he had any other business. The policyholder resided on the same street which intersects, but does not cross 3rd Street. This accident occurred a short distance from where the policyholder resided. While there is no direct evidence in the record that Darby was going to the home of this policyholder to collect the premium at the time of the accident, as in the former trial, there are such facts and circumstances as would warrant an inference that that was his mission at the time the accident oc-

curred. If from these facts and circumstances a reasonable inference could be drawn that he was then going to the home of the policyholder to collect this premium, according to the holding of the Supreme Court in this case, it would become a question to be submitted to the jury.''

Criticism is made of the statement by the Court of Appeals in the above quotation that when Darby called to collect the premium on the Allen policy he was told by Mrs. Allen that ''her husband was not at home and that he would be prepared to meet the payment of the premium at a later date.'' It is insisted that, in response to an objection, Mrs. Allen was not permitted to testify to what she told or said to Darby on the occasion of his visit; that the Court of Appeals ''siphoned into the record evidence from the former trial.'' Counsel is correct, but the point is not material. Darby doubtless ascertained that Mr. Allen was not at home, whether he was so told by Mrs. Allen or not. The important fact is that this agent did call at the Allen home to collect the premium falling due at this time, and did not get the money that day, affording basis for the inference that he would return after Allen's pay day, and that he was doing so when this accident occurred, in the immediate neighborhood of the Allen home and while moving in that direction. Darby having testified to all these facts of his mission on the former trial, and this testimony being in the minds of counsel and Court, it is not strange that some slip such as this should be made.

■ ■ We are unable to say that the circumstances mentioned in the foregoing quotation from the opinion of the Court of Appeals, and others in the record, did not afford to the jury reasonable grounds for the inference that Darby was at this time on this mission for

the Company. He could have been on no other business mission, as by his exclusive contract, he could do no other business. He was in line with a practice of the agents to make repeat, or "back," calls for premiums. The situation demanded such a repeat call on the Allens. Moreover, we think the jury was justified in giving weight to the failure of the defendant to introduce Darby to prove that he was not on this or some other mission for his employer, if this was the fact. The situation in *Western Union Tel. Co.* v. *Lamb,* 140 Tenn., 107, 203 S. W., 752, in which this rule of presumption was applied, was quite similar. Indeed, the failure of the Company to introduce this witness, shown to be still in its employ, who had been previously used, and whose testimony was so obviously of importance on the vital issues, not only of his relationship to the Company, and his mission on this occasion, but of his negligence and its degree, and the asserted contributory negligence of the plaintiff, is ominous and inescapably suggestive of implications unfavorable to the defendant.

And this failure has direct bearing on another issue raised by the petitioner, that of independent contractor, to which we have before referred, in view of the recognition by this Court of the rule that when the relationship of employer and employee is shown, the burden is upon the defendant employer to show that the employee was an independent contractor. *Sledge* v. *Hunt,* 157 Tenn., 606, 12 S. W. (2d), 529; *Mayberry* v. *Bon Air Chemical Co.,* 160 Tenn., 459, 26 S. W. (2d), 148. However, upon this issue, assuming, as held by the Court of Appeals, that there is no substantial variance between the evidence introduced on this and on the former trial, we think it must be held that this issue is now precluded by the opinion of this Court on the former appeal,

which in effect found against this contention, and which is now a part of the law of the case.

We come now to another determinative issue, one of fact: Does the evidence, or the fair inference to be drawn therefrom, justify the finding of the jury, trial Judge and Court of Appeals that Darby's use of an automobile in his principal's business was pursuant to a requirement of, or authorized by the Company, his principal? This was an issue which we held on the former appeal should be submitted to the jury, finding that that record contained evidence calling for such submission. It is needless to review here the details of the evidence, direct and circumstantial, appearing in the former record. This is done in the opinion then filed. Quotation is therein made from the form of application all agents were required to sign, in which, among other things, applicants were asked, ''Have you an automobile?'' Witnesses were quoted from, agents of the Company, to the effect that they and all agents were expected to have cars, that a car was considered ''essential'' in soliciting and making collections over the wide territory covered; that the employing representatives of the Company always indicated that agents must have cars; that practically all agents used them with the knowledge and approval, if not at the demand of the superintendents; that supervisors would accompany the agents in the cars, and it was the practice of these supervisors to inspect these cars before they were used. The opinion concluded its review of this particular matter as follows:

''Viewing the evidence, as we must, in the light most favorable to the plaintiff, the application for employment reasonably can be construed to the effect that the ownership of an automobile by the applicant was deemed material by the Company, and indeed, according to the

witness Hull, Dunlap, a district manager in Memphis, stated that it was essential for an applicant to own an automobile before he would be employed by the Company.''

This Court having so found on the evidence on the former trial, this holding becomes the law of the case, if the evidence now before us is the same. Suffice it to say that we find no substantial difference in the evidence now before us bearing on this issue, whatever may be said as to other matters previously discussed. On this issue Darby's testimony was not essential or important. This phase of the case rests on the documents introduced and the testimony of others, appearing without substantial variation in both records.

 The law governing this issue appears to be now fairly well settled by text book authorities and the holdings in other jurisdictions. While we have no published opinion directly applying the rule of liability involved, we have, in at least two cases, discussed below, by clear implication recognized it. Perhaps no better statement has been made of what is now the prevailing opinion of the American Courts respecting this doctrine of liability, than the following from 5 American Jurisprudence, pp. 728, 729, paragraph 393:

''The mere fact that an employee uses his own automobile in the business of the employer does not make the latter liable under the doctrine of *respondeat superior* for injuries inflicted by such employee in the operation of the automobile. If, however, the other circumstances involved in the case are consistent with, or require, the inference that the activity in which the servant was engaged at the time of the tort complained of, and in which he was using his own car or one which he had hired, was within the scope of his employment, the person in-

jured may recover from the employer, *if the servant's use of the automobile or other vehicle was authorized, either expressly or impliedly.* Thus if an employee, with the knowledge and assent of the employer, repeatedly uses an automobile, not owned by the employer, in the latter's business, the employer will be held to have impliedly authorized its use and to be liable for negligence in connection therewith, but the mere fact that an automobile was used on one occasion, unaccompanied by any evidence of other similar acts, does not justify any inference that the employee was later authorized to use the machine upon the employer's business. *The employer is not liable where the use of the automobile or other vehicle operated by the employee is not expressly or impliedly authorized by the employer, and he exercises no control over its operation.* He cannot be held liable under the doctrine of *respondeat superior* for personal injuries inflicted by an employee while engaged in unnecessarily driving his own automobile upon the master's business, without the latter's knowledge or express or implied authorization." (Italics ours.)

The foregoing text is quoted with approval in *Kennedy* v. *American Nat. Ins. Co.*, 130 Tex., 155, 107 S. W. (2d), 364, 112 A. L. R., 916. This opinion cites and quotes from many cases from other jurisdictions, among others our cases of *Kennedy* v. *Union Charcoal & Chemical Co.*, 156 Tenn., 666, 4 S. W. (2d), 354, 57 A. L. R., 733, and *Tucker* v. *Home Stores, Inc.*, 170 Tenn., 23, 91 S. W. (2d), 296, 297. The *Texas* case is followed in 112 A. L. R., by Annotations beginning on page 920.

In support of the rule of liability of the employer or master for injuries inflicted in the operation of an automobile by an employee or servant (and the rule applies as well if the relationship be more strictly that of prin-

cipal and agent), when within the scope of employment, without regard to the ownership of the automobile, if the "use of the vehicle was, either expressly or impliedly, authorized by the employer," the Annotator cites cases from Alabama, California, Florida, Illinois, Iowa, Louisiana, Missouri, Montana, Nebraska, Pennsylvania and Texas. (To these he might have added Massachusetts and New Jersey, cited in the principal case.) And the Annotator adds this comment: "And the above proposition is also supported, inferentially at least, by most cases found throughout the annotation."

This reference to cases so holding by implication includes the two cases from our own State, heretofore mentioned, of *Kennedy* v. *Union Charcoal & Chemical Co.*, opinion by Mr. Justice McKINNEY, and that of *Tucker* v. *Home Stores, Inc.*, opinion by Mr. Justice DE HAVEN. In both of these cases liability of the employer was denied, but expressly upon the ground that the employee driving the car at the time of the accident had not been authorized to use an automobile by the Company, either expressly or impliedly. For example, in the *Tucker* case, 170 Tenn. at p. 26, it was said that: "The rule, supported by the great weight of authority, is that unless it be shown that the use by the servant of his own automobile was expressly or impliedly authorized by the master, the master cannot be held liable for the torts of the servant committed in the use of the automobile," citing the *Kennedy* case, *supra*, and 42 C. J., 1128; 18 R. C. L., 781; 6 R. C. L. Supp., 1084. The opinion proceeds to hold that the burden of proof is upon the plaintiff to show that the automobile was being operated, at the time of the accident, "with the knowledge, consent, or authority, express or implied, of the company." The implication from the discussion and holdings in these opinions of our own Court is inescapable

that, conversely, the master is liable when it appears from the evidence that the use of the vehicle was, either expressly or impliedly, authorized by the employer. And in the yet more recent case of *Life & Cas. Ins. Co.* v. *Bradley,* 178 Tenn., 526, 529, 160 S. W. (2d), 410, opinion by Mr. Justice McKinney, denying *certiorari,* recovery was again denied against the Insurance Company on the express ground that the evidence failed to show that the agent driving the car had been authorized by the Company to use an automobile in its business. Here, again, the implication is that the converse would be held to create liability. But this opinion goes further, affirming that, ''The rule of express or implied authorization . . . is one of universal application, the usual issue in this class of cases being whether there are sufficient facts and circumstances shown to establish an implied authorization.''

In the opinion of Mr. Justice McKinney in *Kennedy* v. *Union C. & C. Co., supra,* quotations are made from other leading text books, among these Blashfield's Cyc. of Automobile Law (1927), vol. 2, p. 1375, and LaBatt's Master & Servant (2nd Ed.), p. 6888. In the latter it is said that: ''The action is deemed to be maintainable, or not maintainable, according as his use of the instrumentality was or was not expressly or impliedly authorized by the master.'' And, further, ''such authorization is manifestly a proper inference wherever it is provided by the contract of hiring that the servant is to use, for the purposes of the stipulated work, an instrumentality belonging to himself.'' The quotation made in the *Kennedy case* from Blashfield has particular relevancy to the instant case. It reads:

''So the fact that one employed to solicit orders has not been directed to use an automobile in performing his duties will not relieve his master and the owner of

the machine from liability for his negligence in driving the machine while soliciting orders, if his use thereof is known to one of the managers of the business, and its use is for the employer's benefit in that it enables the employee to see more people and presumably to make more sales; and an insurance agent to whom has been assigned a district comprising an area of over 200 square miles, and who is allowed to use any reasonable means of conveyance in performing his duties may be found to be acting within the scope of his employment is using an automobile in the course of his duties.'' This language meets our approval, subject to the qualification heretofore stated, that it must appear that the use of the automobile was expressly or impliedly authorized by the principal or master.

Summarizing what has been said, we are constrained to hold (1) that Darby was an agent of the Insurance Company, (2) that he was at the time of this accident acting within the scope of his authority on the business of his principal, or master; and (3) that he was using the automobile, the instrumentality involved in the commission of the tort, by the authority, express or implied, of his principal, and that the Insurance Company was therefore, liable for the damages resulting from this tort.

Three other questions are raised by the petitioner, which call for consideration. In the first place, it is argued that the plaintiff was guilty of proximate contributory negligence, as a matter of law. In view of the concurrent finding of the two courts which have passed on this question, and as the result of our examination of the record, which does not contain the testimony of the driver of the car, we are unable to find merit in this assignment. The controverted facts as to speed and other conditions and conduct presented a question for

the jury. Touching the proposition apparently most pressed to show contributory negligence, that plaintiff said he did not see this approaching car, etc., we find no basis for this insistence. He says he did not see this car until it pulled out of the line of traffic coming south on 3rd Street, which plaintiff was meeting. He was not negligent in failing to see it sooner. Moreover, the evidence on this trial does not differ materially on this issue from that before us on the former hearing, when, at least by implication, this contention was rejected.

Assignments III and IV challenge the action of the Court in permitting the jury to consider Section 820 of the City Ordinance. We concur with the Court of Appeals that the record does not sustain the contention that the trial Judge committed reversible error in this regard.

The second count of the declaration charged violation of City Traffic Ordinances 810, 816, 817, and 820. On the trial of the case, when counsel for plaintiff read the declaration to the jury, counsel for defendant challenged the validity of Ordinance 820, which provided, in substance, that police, fire department, and other emergency vehicles, should have the right of way in any street when in the regular course of duty, and that no driver of any vehicle ''shall interfere with the right of way of any of the vehicles named in this Section when said vehicles are being operated in the regular course of duty.'' The objection was based on the fact that this ordinance conflicted with a State statute subsequently enacted regulating the operation of vehicles, particularly the following Section of Chapter 82, Pub. Acts of 1931:

''(b) The driver of a vehicle upon any road, street, or highway shall yield the right of way to Police and Fire Department vehicles, when the latter are operated upon official business *and the drivers thereof sound an*

*audible signal by bell, siren, or exhaust whistle.''* Section 8.

We have italicized the language which it is alleged conflicts with and supersedes the City Ordinance. There was no claim or proof that the plaintiff sounded any signal as provided by the State statute.

When the objection was made and this question raised, the record shows that the Court permitted the ordinance to be read and said: ''I will rule on it and you may present authorities on it.'' No ruling was ever made.

In this situation it is complained that the Court erred in its charge in failing affirmatively to rule this particular ordinance invalid and, on the other hand, in charging as to this duty generally as follows:

''It is the duty of the driver of an automobile, gentlemen of the jury, to obey the city ordinances, and they are set out in the second count of the declaration, in which the plaintiff says that the driver of the automobile violated certain city ordinances. A city ordinance is an enactment on the part of the Commissioners of the City which prescribes how one should drive an automobile within the city limits, and if the driver of an automobile disobeys or violates one of the ordinances, then in law the act of violation—the violation of the ordinance, is an act of negligence in and of itself.''

However, it appears that when the Judge advised the jury in his charge as to the contents of the declaration and reached the second count, he said that it was charged that ''the driver of the automobile was violating certain city ordinances, *and those city ordinances are as follows.''* (Italics ours.) He then proceeded to enumerate and state the contents of Sections 810, 817 and 816. He did not include or mention Section 820, but proceeded to instruct the jury that the charge of the declaration was ''that the

driver of the automobile was violating these respective city ordinances, and that that was negligence,'' etc.

It is insisted for plaintiff below, and held by the Court of Appeals, that the Court thus definitely eliminated 820 and confined the consideration of the jury to ''these respective City Ordinances'' which he had just named. And that, therefore, the jury could not have been misled.

██ It is also urged that if a more explicit affirmative charge on the subject was desired, it was the duty of counsel for the defendant to so request, as he did not do. As above indicated, we concur in this view. And, moreover, we find that following the presentation of the charge, several requests were presented and given by the Court, who remarked upon the unusual circumstance that counsel on both sides concurred that these requests were proper, the first two of them reading as follows: We quote from the record:

''Here is a special request by the defendant:

'' 'If you find that Mr. Darby gave a plainly visible signal of his intention to turn before he reached the intersection of Third and Lucerne, and that he was within the intersection before Mr. Morrison, then Mr. Darby had the right-of-way at the intersection, and Mr. Morrison was under the duty to yield the right-of-way to Mr. Darby.'

''Here is a special request by the plaintiff:

'' 'On the other hand, under the common law, if Mr. Morrison reached the intersection first, then Mr. Darby was under the duty of permitting Mr. Morrison to cross the intersection without interference from him.' ''

██ Now, it is obvious that in presenting these requests it was recognized by counsel and Court that Ordinance 820 was not the law of the case, since, while these requests made no direct reference to this ordinance, they

conceded that Mr. Darby had the right-of-way, if he reached the intersection before the plaintiff, and that, under these circumstances, it was the duty of the plaintiff to yield the right-of-way to Mr. Darby, which would not, of course, have been the case if the preferential right-of-way had been recognized as in force. These assignments must be overruled.

By the fifth assignment, it is said that it was error for the trial Judge to charge the jury that it might consider the expense of medical and hospital services when there was no evidence introduced as to the value of any such services or expenses, no proof that the plaintiff had contracted, or was under any obligation to pay any sum, on such account.

The exact language used by the Court follows:

"The law is that one who has been negligently injured is entitled to recover fair compensation for the injury that you find was negligently inflicted upon him, taking into consideration the kind and character of the injury; how long it lasted, whether it is permanent, or not; how much physical pain and suffering the plaintiff suffered, if any; an amount that would compensate him for the doctor's bills and hospital bills that he had contracted to pay, if any; the amount that he had lost by reason of the injuries confining him so that he would not be able to follow his usual work. They would be the elements of compensatory damages that the plaintiff would be entitled to recover."

The alleged prejudice to the defendant resulting from this inclusion of doctors' and hospital bills in this quoted portion of the charge has to be considered in connection with the allegations in the first count of the declaration graphically portraying the extent of the injuries inflicted on the plaintiff and his incidental suffering and, particu-

larly, the charge that he spent months in the hospital under the care of surgeons and was subjected to numerous operations customarily attended with great expense, the count concluding with the allegation "that it has been necessary to expend thousands of dollars for hospital, medical and doctors' bills." All of this was brought into the charge of the Court in a forceful manner. Moreover, later in the charge, in stating the plaintiff's theory of the case the Court stated to the jury that the plaintiff claimed that he had spent thousands of dollars for medical and hospital expenses.

Now, it is plausibly insisted that, with all of this impressive reiteration of this claim, the foregoing instructions that all of the matters mentioned "would be the elements of compensatory damages that the plaintiff would be entitled to recover" was misleading and doubtless affected the amount of damages fixed by the jury.

However, it is urged for the respondent that the use by the Judge of the words "if any," following his reference to this element of damages, cured what would have otherwise been error; and this is the view adopted by the Court of Appeals.

The authorities produced by neither side are altogether in point in support of either side. On the one hand, the cases relied on contain no such limiting or restrictive words; and, on the other hand, in the cases cited the language is in every instance much fuller and, therefore, more likely to impress the jury than here. We are unable to agree that the use of simply "if any" is equivalent in force and impressiveness to the words "if any are shown by the evidence." This is likewise true of the language, "if any be shown by the record," which was the language used in *St. Louis & S. F. R. Co.* v. *Moore*, 101 Miss., 768, 58 So., 471, 473, 39 L. R. A. (N. S.), 978,

Ann. Cas., 1914B, 597, one of the cases cited for respondent. Moreover, this case is to be further distinguished in the degree of emphasis put upon this phase of loss and damage in preceding portions of the charge, to which reference has been made.

Although the plaintiff undoubtedly suffered severely, and has been permanently injured, the sum of $25,000 is relatively large in this jurisdiction. We have referred to the failure of Darby, the principal actor in the commission of this tort, to testify, and have indicated acceptance of the theory that this omission of this witness on this hearing was chargeable to the defendant Insurance Company. But this is not clearly established and it is possible that the failure to use him as a witness was in some measure attributable to the fact that a non-suit had been taken as to Darby, originally a defendant. And it is possible that the lack of his testimony not only weakened the defense on the facts of the collision, but affected the minds of the jury, at least subconsciously, in fixing the amount of the verdict. But however this may be, we are not satisfied that the insertion of these formal qualifying words, "if any," in the context was sufficient to eliminate this element of loss and damage from the consideration of the jury. Our conclusion is that the judgment be affirmed, but on condition that a *remittitur* in the amount of $5,000 be accepted and, otherwise, that the case be reversed and remanded for a retrial.