## J. L. KENNEDY ET AL. V. AMERICAN NATIONAL INSURANCE COMPANY.

No. 7247. Decided June 23, 1937.
Rehearing overruled July 28, 1937.
(107 S. W., 2d Series, 364.)

*LeRoy H. Buss,* of Donna, *Nat L. Hardy, Joe Dickson,* and *T. M. West,* all of San Antonio, for plaintiff in error.

Under the facts of this case, R. L. Wilson was the servant of the insurance company, his employer, in the performance of his master's business at the very time of the occurrence of the accident and the doctrine of respondeat superior did apply to his negligent operation of his automobile at the time of the accident. Schroeder v. Rainboldt, 128 Texas 269, 97 S. W. (2d)

679; Fidelity Union Life Ins. Co. v. McGinnis, 62 S. W. (2d) 186; Woodward-Wanger Co. v. Nelson, 11 S. W. (2d) 371.

*Lorimer, Brown & Davis,* and *Neal Brown,* all of Harlingen, for defendants in error.

There being no evidence to show that the company knew what means Wilson was using in going about the business, and that the car he was using was his own, and not that of the company, and that the company had not instructed him as to what means he could use in transportation, and the Court of Civil Appeals having found that the means of transportation used had no direct relation to the performance of his duties, the company was not liable in damages for the injuries resulting from the collision between Wilson and the Kennedys. American Natl. Ins. Co. v. Denke, 128 Texas 229, 95 S. W. (2d) 370; Hughes v. Western Union Tel. Co., (Ia.) 236 N. W. 8; McCaughen v. Missouri Pac. Ry. Co., (Mo. App.) 274 S. W. 97.

MR. JUDGE MARTIN, of the Commission of Appeals, delivered the opinion for the Court.

The parties will carry here their trial court designation.

Plaintiffs recovered judgment against defendant as the result of an automobile collision. That judgment was reversed and rendered by the Court of Civil Appeals. See American National Insurance Company v. Kennedy, 101 S. W. (2d) 825, where the facts are fully stated.

We agree in part with the conclusion reached by the Court of Civil Appeals, and write in the hope that we may be able to clarify, in some degree, a subject involved in considerable confusion. The evidence in this case went no further than to show that Wilson, an agency inspector of defendant insurance company, working for a salary while traveling in his own car on a journey from one town to another to keep an appointment having to do with company business, negligently injured the plaintiffs in an automobile collision. It is not claimed that there is any evidence of an express authority from the insurance company to its agent to use such car in his work, nor are we cited to evidence which raised any issue of implied authority for its use, nor can we find in the record any fact or circumstance from which an inference can be drawn that the work of the agent was inherently such as to make the use of an automobile a thing necessarily contemplated by the parties as part of the contract of employment of the agent.

This case was apparently tried and disposed of in the trial court upon the theory that liability of the insurance company was established upon proof only that its salaried agent traveling in his own car from one town to another on company business, negligently ran into another car with his own.

There are pointed expressions in a few cases, and particularly in the case of Guitar v. Wheeler, 36 S. W. (2d) 325, that justified the trial court in so concluding. It was said in this case:

"We think it immaterial under the facts here that the automobile, driven by Tidwell at the time of the accident, belonged to Tidwell, if he was using it in the performance of a duty he owed his employers. The ownership of the automobile is simply an incident in the performance of his service; the thing done by the servant in the performance of a duty to his master is the ultimate act, and not the instrument with which he performs the duty that makes the master liable."

This is not believed to be an accurate statement of the rule, for the reasons hereafter given.

The Supreme Court of Tennessee recently referred to three Texas opinions in the following language:

"Counsel for plaintiffs rely upon Texas Power & Light Co. v. Denson, 45 S. W. (2d) 1001, Buick Automobile Co. v. Weaver, 163 S. W. 594, and Guitar v. Wheeler, 36 S. W. (2d) 325, being cases decided by the Texas Court of Civil Appeals. These decisions, however, are not in accord with the great weight of authority with respect to the rule that it must be shown that the use by the servant of his own car was expressly or impliedly authorized by the master, before the master can be held liable for the negligence of the servant in the operation of the car." Tucker v. Home Stores, Inc., 91 S. W. (2d) 296.

■■ There was ample evidence in the Denson case, supra, to support the inference that the servant's use of his own automobile was impliedly authorized by the master. This was recognized by both the Court of Civil Appeals and the Commission of Appeals. See Texas Power & Light Co. v. Denson, 125 Texas 383, 81 S. W. (2d) 36. However, we will not turn aside here to attempt to distinguish the Texas cases last mentioned from the present one. American Jurisprudence has stated the rule applicable here, which in our opinion correctly reflects the prevailing opinion of the American courts respecting the point under discussion. It is:

"The mere fact that an employee uses his own automobile in the business of the employer does not make the latter liable

under the doctrine of respondeat superior for injuries inflicted by such employee in the operation of the automobile. If, however, the other circumstances involved in the case are consistent with, or require, the inference that the activity in which the servant was engaged at the time of the tort complained of, and in which he was using his own car or one which he had hired, was within the scope of his employment, the person injured may recover from the employer, *if the servant's use of the automobile or other vehicle was authorized, either expressly or impliedly.* Thus, if an employee, with the knowledge and assent of the employer, repeatedly uses an automobile, not owned by the employer, in the latter's business, the employer will be held to have impliedly authorized its use and to be liable for negligence in connection therewith, but the mere fact that an automobile was used on one occasion, unaccompanied by any evidence of other similar acts, does not justify any inference that the employee was later authorized to use the machine upon the employer's business. *The employer is not liable where the use of the automobile or other vehicle operated by the employee is not expressly or impliedly authorized by the employer, and he exercises no control over its operation.* He can not be held liable under the doctrine of respondeat superior for personal injuries inflicted by an employee while engaged in unnecessarily driving his own automobile upon the master's business, without the latter's knowledge or express or implied authorization." 5 American Jurisprudence, pp. 728-729, Par. 393. (Emphasis ours.)

As more pointedly showing the attitude of our courts we quote from a few of the many cases upon the subject.

From Pennsylvania:

"To hold a master legally responsible for the act of a servant who is engaged in furthering his master's business, and who while doing so negligently uses some instrumentality that carries him from place to place, it must either be proved that the master exercises actual or potential control over that instrumentality, or the use of the instrumentality at the time and place of the act complained of must be of such vital importance in furthering the business of the master that the latter's actual or potential control of it at that time and place may reasonably be inferred. * * *

" 'Negligence in the conduct of another will not be imputed to a party if he neither authorized such conduct, nor participated therein, nor had the right or power to control it.' " John Wesolowski, Jr., et al. v. John Hancock Mut. Life Ins. Co., 87 A. L. R., p. 783.

Tennessee:

"The use of the automobile by Wright in going to the bank for change was not authorized by the company, either expressly or impliedly. So far as the record discloses, none of the officers of the company knew that Wright owned an automobile. While Wright had gone to the bank on several prior occasions in his automobile for change, it is not shown that the company had any knowledge of such fact.

"The rule, supported by the great weight of authority, is that unless it be shown that the use by the servant of his own automobile was expressly or impliedly authorized by the master, the master can not be held liable for the torts of the servant committed in the use of the automobile. Kennedy v. Union Charcoal & Chem. Co., 156 Tenn. 666, 4 S. W. (2d) 354, 57 A. L. R. 733; 42 C. J. 1128; 18 R. C. L. 781; 6 R. C. L. Supp. 1084.

"The burden of proof was upon plaintiffs to show that Wright operated the automobile, at the time of the accident, with the knowledge, consent, or authority, express or implied, of the company. McCaughen v. Mo. Pac. R. Co., (Mo. App.) 274 S. W. 97." Tucker v. Home Stores, Inc., 91 S. W. (2d) 296.

Missouri:

" 'Where, with the express or implied assent of the employer, the employee uses a vehicle which the employee owns in the discharge of his duties, the employer will be liable for any injury occasioned by its negligent operation by the employee while acting within the scope of his employment.' 42 C. J., Sec. 900, p. 1128; Labatt on Master and Servant, Vol. 6, Sec. 2282." * * *

"Of course, it makes no difference upon the question of the employer's ultimate liability that the vehicle may belong to the servant himself, provided only that the servant was driving it at the time with the actual or implied consent of his employer, and in the discharge of the duties owed by the servant to him. Margulis v. National Enameling & Stamping Co., 324 Mo. 420, 23 S. W. (2d) 1049; Burgess v. Garvin, 219 Mo. App. 162, 272 S. W. 108; Gordner v. St. Louis Screw Co., 201 Mo. App. 349, 210 S. W. 930." Chiles v. Metropolitan Life Ins. Co., 91 S. W. (2d) 164.

New Jersey:

"It is argued that the defendant MacLachlan was an independent contractor. We think he was not. It appeared that MacLachlan was employed by the Sinclair Refining Company to devote his whole time and best endeavors to the sale of the company's products to factories in a specified territory in New

Jersey; that he was authorized to use in that work his own automobile; that the company paid him for the upkeep and running expenses of his car weekly upon production of required vouchers, besides his salary, which was paid every two weeks, and that the company retained control and directed the work by daily telephonic or written communications with him from its New York office. He was therefore a servant of the company and not an independent contractor, and the company was liable for the death of decedent sustained through his negligence in the performance of his duties. Lewis v. National Cash Register Co., 84 N. J. L. 598, 87 Atl. 345." Kathryn Swarts Auer, Exrx., etc., of Gustave S. Auer, Deceased, v. Sinclair Refining Co. et al., 54 A. L. R. 623.

Texas:

"It would be superfluous to quote from these decisions, except to emphasize the controlling element of liability in such cases as these. This element consists in the fact that the agent or solicitor must be under the control of the principal as regards his physical movements in the performance of the contract in order to create liability upon the part of the principal for the agent's tortious acts. * * *

"Under that case and the authorities cited in the opinion therein we hold that France was not an agent of the relator in respect to the operation of his automobile, but an independent contractor, if he can be considered as a 'contractor' in any sense in that regard. The term 'independent contractor' is perhaps a misnomer as so applied. It would be more exact to say that no contractual relations whatever existed between France and the relator as to the operation of the automobile. Whether France was a 'contractor' or not, his operation of the automobile was entirely 'independent' of the relator, and, this being so, the relator is not responsible for his conduct in operating it." Am. Natl. Ins. Co. v. Denke, 107 A. L. R., p. 409.

In this case the trial court made a specific finding of agency in the following language:

"It appearing to the court that sufficient testimony and evidence was given, showing that the witness R. L. Wilson was, as a matter of law, the agent of American National Ins. Co., and that he was so actively engaged as such at the time, place and on the occasion in question, and no issue having been requested by the American National Insurance Company through their attorneys of record, as to the question of agency, the court finds, as a matter of law, that the American National Insurance Company is to be held liable for the acts of such, R. L. Wilson."

 The trial court gave controlling effect to an ancient rule, which in general terms correctly states the law governing the liability of a principal for the tortious acts of his agent. The law must recognize and adapt itself to a "constantly progressive and changing commercial life." The introduction and wide use of the automobile as a vehicle of travel, with its attendant dangers, challenged the early attention of the courts to the harshness of the application of the old rule in the abstract, and there has been evolved as a consequence an enlarged and modern one, which we have quoted. It is however no more than the application by analogy of old principles to new conditions, a recognition of a changed commercial life, to which a rule of "ox cart" days can not, in strict letter, be applied, without in some cases doing a grave injustice. Many modes of travel are open to a traveling insurance agency inspector. Which of these did Wilson commonly use? Was he left to select his own mode of travel? Did the defendant know he owned and used an automobile in his work? Was the inherent nature of his work such as to require the use of an automobile? What was the contract, express or implied, between the agent and his principal in this case respecting the use of an automobile? These and many other questions affecting the point at issue, remain unanswered by this record. The burden was on plaintiff to show more than mere agency and a tortious act, not done in the immediate performance of his work for the principal. Wilson committed no tort while engaged in actually making an inspection of offices for his principal. Was there express or implied authority from his principal for the use of the instrumentality with which the tortious act was committed? Upon this point plaintiff's evidence is insufficient to show liability. The trial court, probably misled by expressions in the cited cases, and others of like character, tried and disposed of this case upon an erroneous theory. Plaintiff's case apparently has not been fully developed.

"What we have said requires a reversal of the judgments below, but we are of the opinion that we ought not to render the case. The statute provides that the Supreme Court shall reverse and remand, rather than reverse and render, a cause, when the justice of the case demands another trial. R. S., Art. 1771. Under this we have held that we will remand rather than render final judgment, when justice will probably be better subserved. Faulkner v. Reed, (Tex. Com. App.) 241 S. W. 1002. This rule is followed even in cases where the Supreme Court has power under the facts to reverse and dismiss the case. Faulkner v. Reed, supra; Green v. Rugely, 23 Texas 539; Zwernerman v. Rosenberg, (Tex. Sup.) 11 S. W. 150." Waggoner

v. Herring-Showers Lumber Co. et al., 40 S. W. (2d) 4. See also Taylor v. U. S. Fidelity & Guaranty Co., 283 S. W. 161; Donoho v. Lewis, 12 S. W. (2d) 983.

The Court of Civil Appeals correctly reversed the trial court judgment, but erred under this particular record in rendering it.

Judgment of Court of Civil Appeals in so far as it reversed the trial court judgment is affirmed, its rendition of same is reversed and cause ordered remanded to lower court for new trial.

Opinion adopted by the Supreme Court June 23, 1937.

Rehearing overruled July 28, 1937.