J. C. PENNEY CO., INC., v. OBERPRILLER.

No. 4019

Court of Civil Appeals of Texas. Beaumont.
June 18, 1942.

Rehearing Denied July 13, 1942.

Dissenting Opinion July 18, 1942.

Wood, Gresham, McCorquodale & Martin and M. S. McCorquodale, all of Houston, for appellant.

Collins, Williams & Garrison, of Lufkin, for appellee.

WALKER, Chief Justice.

On the 12th day of December, 1940, at the intersection of South First Street and Lufkin Avenue in the city of Lufkin, appellee, F. C. Oberpriller, was struck by an automobile driven by Grady Crain. This suit was by appellee against Crain and appellant, J. C. Penney Company, Inc., for damages for the injuries suffered by him in the collision, on allegations of specific acts of negligence against Crain, and that he was the agent and servant of appellant, and at the time of the collision was driving the automobile in the course of his employment and in furtherance of appellant's business. On trial to the court without a jury, judgment was for appellee against Crain and appellant, jointly and severally, for $7,-500, from which appellant only has prosecuted this appeal. The court did not file conclusions of fact and law, but the appeal is on a full statement of the facts.

On the undisputed evidence, at the time of the collision Crain was an employee of appellant and was driving his own personal automobile in which appellant had no interest. Unless directed to use it, Crain had no authority from appellant to use this car in its business.

The first point presented is that there was no evidence that at the time of the collision, Crain was acting in the course of his employment with appellant, or in furtherance of appellant's business, and there was no evidence that Crain was authorized to use his personally owned automobile in performing any work for appellant. This contention is overruled on the following statement.

For seven or eight years immediately prior to the collision, C. A. Wharton had been the manager of appellant's store at Lufkin, appellant being a corporation with its main office in New York. Wharton defined his duties and authority as follows: "About the same as an individual store. I have practically all authority, hiring the help, buying the merchandise, and as near like an individual store as could be. I have the same authority in running the store as if I owned it." Wharton testified further that he used the bus in shipping heavy packages to customers out of Lufkin; he delivered these packages to the bus station in his own automobile; Grady Crain at the time of the accident was one of appellant's employees, a clerk; he helped buy shoes; more or less served as janitor; he also helped check freight and swept up; his working hours were from eight o'clock in the morning until six o'clock in the evening on week days, and until nine o'clock on Saturday. He was sbject to Wharton's instructions, if and when he chose to send him anywhere. He had no authority from Wharton to use his personally owned car in his employer's business. He did not have public liability insurance on his car; had the car been insured, Wharton would have had the right to require him, or to ask him, to deliver packages in his car to the bus station.

On the day of the accident, Crain left his car at a garage to be repaired. Wharton did not know the location nor name of this garage. During the day Crain asked Wharton's permission to go to the garage and get his car before the garage closed, and Wharton gave him his permission. After Crain asked for this permission Wharton gave him a roll of wrapping paper to be delivered for appellant, to the bus station, which was a few blocks from appellant's store. On this issue Wharton testified (Q. & A. reduced to narrative): "I gave Crain the roll of wrapping paper to be delivered for my company to the bus station, when he left the store. Yes, sir. I didn't give it to him; I told him to take it. Grady Crain was taking this paper from the store to the station as a service to J. C. Penney Company, Inc. He was making a delivery; he was doing it for the company because I asked him to take it down; that was during an hour of the day when he was on duty, and being paid for that hour of work. Crain helped sweep the store in the evening, which was a part of his duties as an employee. I knew that

Crain's duties required him to return and sweep up before going home, yes, his job. When he left the store that afternoon to go get his car and to deliver the roll of wrapping paper his duties required him to return and sweep up, yes, his job. When he left the store that afternoon to get his car and deliver the roll of paper, I expected him to come back and sweep up. I was there when Crain came back and saw him sweeping. Crain was subject to my instructions, when I chose to send him anywhere."

Crain delivered the package to the bus station. On his return from the bus station he went by the garage, which was just a short distance off the direct route back to the store, and got his car, intending to park it at the rear of the store. But when he got to his parking place, all parking places had been taken. He did not stop, but continued driving his car along the alley and along the side of the store until he reached the street in front of the store; then he turned left, going south, and continued along the street looking for a parking place. He was about a block from the store, going away from it, looking for a parking place, when the accident occurred. After the accident, he drove back to the store and parked in front of it.

We have no point before us on the issue of Crain's negligence as a proximate cause of appellee's injuries.

■ The issue is whether Crain was engaged upon his employment at the time of the accident, an issue independent of whether he was in the general scope of his employment. Hickson v. W. W. Walker Co., 110 Conn. 604, 149 A. 400, 68 A.L.R. 1044. It must be said that the driving of the car—the act of driving his personally owned car—was not in the general scope of his employment, since under the rules of his employment he was instructed not to drive his car in the discharge of the duties of his employment.

■ But was he engaged upon his employment at the time of the accident? This question should be answered in the affirmative. The accident occurred within the hours of his employment; his job for the day had not been completed, and he was paid for the time he was absent from the store. He left the store on the orders of his employer, on a mission for his employer, under implied instructions to return to the store and finish his day's work. He did return to the store on his employer's time, and the accident occurred on his return trip to the store.

■ Should it be said that Crain's departure from the direct route from the bus station to the store was of a nature to take him out of his employment? This question should be answered in the negative. He had been given permission to get his car out of the garage before closing time. Before closing time his employer sent him on a company errand, knowing that he would walk to the bus station, and on his return trip would go by the garage, get his car and return to the store in his car. The return trip from the bus station to the store was not for his personal convenience, as was his return to his home for his lunch, or at the end of his day's work. This return trip was a duty he owed his employer under his contract of employment. True, the trip to the garage for his car was a deviation from the usual route of travel from the bus station to the store, and on an errand not incidental to his employment. But the departure from the usual route of travel and the personal errand were both authorized by appellant as incidental to the return trip; this should be inferred from Crain's duty to return to the store and Wharton's knowledge that he would use the car to return to the store.

At what moment from the time the package was delivered to Crain, until he returned to the store and entered upon the duty of his employment, did Crain depart, if he did depart, from the duties of his employment? During all the time he was going to the bus station and returning to the store he was appellant's employee. His master authorized him to depart from the direct route of travel to go to the garage. This part of the return trip was an essential part of his return to the store, and was authorized by his employer. Though his car was delivered to him and he finished his trip back to the store by driving his own car, the trip from the garage to the store was an essential part of his return trip; the use of his own car was authorized by appellant, on a return trip that originated in his employer's business. It seems to us that during every moment of the time he was absent from the store he was engaged upon his employment.

■ That Crain did not return by the most direct route from the bus station to the store was not a controlling fact, be-

cause Wharton gave him a discretion in the selection of the return route. He did not give him instructions on the return route, for the reason that he did not know the location of the garage where Crain had his car stored. But having authorized him to use his car on the return trip, then necessarily he vested him with a discretion in choosing his return route. The rule on this issue is announced as follows by Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., vol. 5, p. 190, § 3035: "The rule that a deviation from the most direct route does not constitute an abandonment of the master's business is particularly true where the servant has been given a discretion in choosing the route."

It is also not controlling that, in getting his car and driving it back to the store, Crain was serving his own purpose. In Vanderlippe v. Midwest Studios, 137 Neb. 289, 289 N.W. 341, the Supreme Court of Nebraska ruled that a servant may on the same trip combine both his own and his master's business, and if, while on such trip, the servant negligently causes injury, the master is liable.

■ The permission given Crain by Wharton to get his car on the return trip to the store authorized the trial court to draw the inference that Wharton expressly authorized him to get the car and to use it. Weatherford, etc., Ry. Co. v. Crutcher, Tex.Civ.App., 141 S.W. 137.

■ On this issue, Judge Martin, writing the opinion for the Commission of Appeals in Kennedy v. American National Insurance Co., 130 Tex. 155, 107 S.W.2d 364, 367, 112 A.L.R. 916, quoted with approval the following rule announced by the courts of Missouri: "It makes no difference upon the question of the employer's ultimate liability that the vehicle may belong to the servant himself, provided only that the servant was driving it at the time with the actual or implied consent of his employer, and in the discharge of the duties owed by the servant to him." In the case at bar, Crain used his personally owned car in the discharge of his duty to his employer—the duty of returning to the store—with his employer's express or implied assent. So, since Crain was driving his car at the time of the accident with the actual or implied consent of his employer—actual or implied authority—it is wholly immaterial that the car belonged to Crain and that his use of the car was not within the general scope of his employment.

■ We overrule the contention that appellee was guilty of contributory negligence, in that, as a matter of law, he failed to keep a proper lookout. On this issue appellee testified in substance as follows: First Street runs north and south and Lufkin Avenue runs east and west. These streets intersect in the center of the business district of the town. Lufkin Drug Store is on the corner south of Lufkin Avenue and west of First Street, and Trevathan's Drug Store is south of Lufkin Avenue, directly across on the east side of First Street. In the center of the intersection of First Street and Lufkin Avenue there is a traffic light; when he looked up he observed the color of the light on his side; he was on the west facing east, and the color signal light on the west side of the light, on his side, was green; green was the signal he was supposed to cross the street on as a pedestrian. The signal on the north and south side is red when it is green on the east and west side. When he started across, the light was green on his side. When the car hit him he was in that lane, made by two white lines across the street. He was not aware of the car coming before it struck him. When he looked up the traffic light was green, and he started across; when he got there, that is to the corner, and looked up, the light was green and he started across; he looked to his left before he started across; he looked north along the street to see if any cars were coming before he looked for the green light, looked before he looked for the green light. After he started across the street, he looked forward on his way across the street. As to why he didn't continue to look to his left after he started across the street, he had the right to go across, and watched forward to keep from walking into anybody. He looked to the left and the light was green, and he was in the lane going across the street. As to what, if anything, he did before he started across the street to ascertain if any cars were approaching him from the left he said, "I looked to the left; there were not any coming; I looked up and saw the light, and started across." On this statement it does not require the citation of authority to sustain the proposition that appellee was not guilty of contributory negligence, as a matter of law, in the respect charged by appellant.

We give appellant's last point: "The District Court erred in entering judgment in this case because it was affirmatively shown that Grady Crain, one of the defendants in the case against whom judgment was taken, was in the army at the time of trial and a default judgment was taken against Grady Crain without appointment of counsel to represent him and without compliance with the Soldiers' and Sailors' Relief Act, 50 U.S.C.A. Appendix, § 111. It was error to enter judgment against J. C. Penney Company, Inc., because, since the judgment was not final as to Grady Crain, the judgment did not dispose of all of the parties to the suit." On this issue we quote as follows from the judgment of the lower court: "After having thoroughly considered all of the testimony so introduced the Court is of the opinion and further finds that the defendant, Grady Crain, was duly cited to appear and answer in this cause at the term of this Court which convened on March 17, 1941, and that since that date terms of this Court have successively convened on July 28, 1941 and November 10, 1941, and at no time since this suit was filed has the said Grady Crain ever made an appearance in this cause nor did he appear when this cause was so set and called for trial on December 8, 1941; consequently, the Court is of the opinion and finds that the said Grady Crain wilfully, intentionally and purposely failed to appear and answer in this cause and intentionally made default herein at the term of Court which convened on March 17, 1941 and at each succeeding term thereafter and on December 8, 1941, when this case was set and called for trial by virtue of which the Court is of the opinion and finds that although it is shown that the said Grady Crain is now in the armed services of the United States of America he is not entitled to the benefit and relief of the Soldiers' and Sailors' Civil Relief Act [50 U.S.C.A. Appendix, § 501 et seq.] in this cause since he voluntarily entered the armed services of this country on December 9, 1941, the day after this case was actually called for trial and after he had intentionally made default, although he was actually in the City of Lufkin on December 8, 1941, at the very time this case was called for trial; and the Court further finds that the defendant Grady Crain had at no time in the past, did not at the time of this trial and does not now intend to

ever defend against this action brought by plaintiff. It is therefore ordered, adjudged and decreed by the Court that the plaintiff, Frank C. Oberpriller, have and recover judgment of and from the defendants, Grady Crain, and J. C. Penney Company, Inc., a private corporation, jointly and severally, in the sum and amount of Seven Thousand Five Hundred ($7,500.00) Dollars and it is further ordered, adjudged and decreed by the Court that the said Plaintiff recover of and from said defendants, jointly and severally all costs of Court incurred in this cause, for all of which, and for the enforcement of the terms of this judgment, execution may issue."

Crain is not complaining of the ruling of the court. There is nothing in the record to suggest that appellant has been injured in the least by the fact that judgment was taken against Crain; appellant plead for no relief against him.

The theory of appellant's proposition is that the court was without jurisdiction to enter judgment against Crain; therefore, since Crain was not disposed of by the judgment it is interlocutory and not final. This contention is overruled. Subdivision (4) of Section 520, Title 50, U.S.C.A. Appendix, provides: "If any judgment shall be rendered in any action or proceeding governed by this section against any person in military service during the period of such service * * *, and it appears that such person was prejudiced by reason of his military service in making his defense thereto, such judgment may, upon application, made by such person or his legal representative * * *, be opened by the court rendering the same and such defendant or his legal representative let in to defend." Under this section of the statute it can not be said that the judgment, as against Crain, was void. He was regularly a party to the suit, and being subject to the court's jurisdiction, the court had the power to render judgment against him. The utmost point that could be successfully urged by appellant is that the judgment against Crain was voidable, a point reserved to Crain only, and not available to appellant. Since this was an action in tort, the judgment was against the two tort-feasors, jointly and severally; error, as against Crain only, was not available to appellant. It is said in 3 Texas Jurisprudence, Sec. 815, page 1159: "Moreover, there is abundant authority to

the effect that a judgment against several tort-feasors in respect to the same wrong may be reversed as to one defendant and allowed to stand as to another."

The judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.

COMBS, Justice (dissenting).

It is my view of the evidence that Grady Crain, driver of the automobile in question, was on a purely personal mission of his own, not connected in any way with the business of his employer, at the time of the accident. If this construction of the evidence be correct, then it follows that no liability attached to the appellant, J. C. Penney Company Inc., by reason of his negligent operation of his automobile.