# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00587-CV

### Luzstella Arbelaez, Appellant

### v.

### Just Brakes Corporation, Appellee

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
### NO. 02-694-C26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

Because Paul was picking up food for himself and his co-workers, I respectfully disagree with the majority that he could have been acting in the course and scope of his employment as a brake technician. The court-made doctrine of vicarious liability has developed as a policy choice to allocate to employers, as a required cost of business, the losses caused by employees that are sure to occur in the conduct of the employer's enterprise. Keeton, et al., *Prosser and Keeton on the Law of Torts* § 69, at 499-501 (5th ed. 1984) (Keeton); *see also Dutcher v. Owens*, 647 S.W.2d 948, 950-51 (Tex. 1983). Such risks are placed upon the employer

> because, having engaged in an enterprise, which will on the basis of all past experience involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through

prices, rates or liability insurance, to the public, and so to shift them to society, to the community at large.

Keeton at 499-501, *quoted in St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 540-41 (Tex. 2002). Thus, "the scope and extent of vicarious liability under the common law is clearly a policy determination—pure although not simple." *Wolff*, 94 S.W.3d at 541. I conclude that the public policy choice here is both pure and simple: employers should not be vicariously liable for the torts of their employees committed while engaged in personal errands, even while "on the clock."

Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an employee acting within the scope of his employment, although the employer has not personally committed a wrong. *Id.* at 541-42. "The most frequently proffered justification for imposing such liability is that the principal or employer has the *right to control the means and methods* of the agent or employee's work." *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998) (emphasis added), *quoted in Wolff*, 94 S.W.3d at 542; *see also American Nat'l Ins. Co. v. Denke*, 95 S.W.2d 370, 373 (Tex. 1936). This right to control distinguishes independent contractors, who have sole control over the means and methods of the work to be accomplished, from employees. *Sampson*, 969 S.W.2d at 947. Indeed, as the majority notes, the right to control is the "supreme test" for whether the master-servant relationship exists. *Wolff*, 94 S.W.3d at 542 (citing *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 290 (Tex. 1996)). The test boils down to this question: Does the person sought to be held liable have such a degree of express or implied control over the actor that it is *just* to impose on him the

2

consequences of the actor's wrongful conduct? *Wolff*, 94 S.W.3d at 542. I cannot answer this question in the affirmative under these facts.

There is no evidence that Just Brakes or Paul's manager had the right to control the means and methods of Paul's breakfast run. Paul's manager testified that he did not direct Paul to take any particular route to get to the McDonald's and that he himself would have taken a different route. Nor can I imagine any circumstances under which Paul's manager would have the *right* to control *how* Paul got to and from McDonald's. Because Paul was merely picking up a *meal* for himself and co-employees, I cannot imagine what possible right his manager had to direct how Paul went about accomplishing this "assignment," if it could fairly be characterized as an assignment.

Furthermore, these facts do not, as a matter of law, create a fact issue on all three prongs of the supreme court's test asking whether the act was: (1) within the general authority given to the employee; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed. *See Leadon v. Kimbrough Bros. Lumber Co.*, 484 S.W.2d 567, 569 (Tex. 1972); *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 357 (Tex. 1971); *Kobza v. Kutac*, 109 S.W.3d 89, 93 (Tex. App.—Austin 2003, pet. denied); *see also Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 576 (Tex. 2002). Summary judgment in favor of Just Brakes was proper because the evidence creates no fact issue on the second two prongs.

First, Arbelaez urges that Paul's trip to McDonald's was in furtherance of Just Brakes' business because some evidence indicates that Paul's manager asked him to fetch breakfast. The fact issue as to whether Paul volunteered or was asked to go to McDonald's is irrelevant because the question we must resolve is whether Paul, an automobile brake technician, could have been

3

acting in furtherance of Just Brakes' business while traveling to McDonald's, even if ordered to go by his manager. *See Brown*, 933 S.W.2d at 736 (despite manager's request, running personal errand for manager was not in course and scope because it did not further employer's business).

The connection between the business of repairing automobiles and picking up a meal for employees is tenuous at best. Meals are by nature personal, not business affairs. *See J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 639 (Tex. App.—San Antonio 1993, no writ) (despite being on 24-hour call and driving employer's vehicle, employee was not in course and scope when returning to work site from lunch); *Andrews v. Houston Lighting & Power Co.*, 820 S.W.2d 411, 414 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (using company vehicle to get lunch is not in furtherance of employer's business). While it may be in any business's interest to have employees fed and functioning at full efficiency, not every activity promoting attendance or efficiency can subject an employer to liability as being "in furtherance" of its business. Perhaps an employee will work more efficiently if he is permitted to leave his office to purchase a coffee in the waning afternoon hours, or perhaps an employee will provide better customer service after she has picked up a medical prescription from the corner drugstore on her morning break. A manager may even "order" an employee to go to the doctor because his consistent coughing is slowing his work pace and putting other employees at risk of contagion. But an incidental benefit to an employer from an employee's personal errand cannot open the employer to vicarious liability for all such activities. Even if the employee runs an errand for the benefit of a superior or at such superior's behest, such activity cannot subject an employer to vicarious liability if it is not undertaken in furtherance of the

4

employer's business. *See Brown*, 933 S.W.2d at 737. Rarely will obtaining breakfast further an employer's business.

Here, Arbelaez urges that using one employee to pick up breakfast for the others furthered the business of Just Brakes by minimizing the number of absent employees, "thus providing enhanced customer service and enabling employees to work more efficiently." This argument relies on the deposition testimony of David Lilly, a corporate representative for Just Brakes, who stated that (1) "common sense" would dictate that a store manager not allow all employees to take their fifteen-minute breaks at the same time; (2) it is important to have a manager present at all times; (3) a reasonable manager would try to reduce the number of mechanics missing at any given time; and (4) to get a day's work done, a store requires a minimal number of mechanics. Taking all of this evidence and making all *reasonable* inferences in favor of Arbelaez, such incidental benefit to Just Brakes cannot subject it to vicarious liability for its employee's negligence while making a breakfast run.

There are countless personal errands or affairs from which an employer's business productivity or efficiency will arguably benefit. However, the test does not ask whether the act of the employee benefitted the employer; rather, it asks whether the act was *in furtherance of the employer's business.* Just Brakes' business is the servicing of automobiles. Under these facts, picking up breakfast for the employees, as opposed to picking up automobile parts for the repair of cars, does not further Just Brakes' business.

Arbelaez retorts that evidence indicating that such breakfast runs were "routine" supports her allegation that Paul was acting in the course and scope of employment. Paul testified

5

that breakfast runs occurred every day, and the depositions of Lilly and Paul's manager indicate that other Just Brakes locations have the same custom of allowing one mechanic to pick up breakfast or lunch for the crew. Arbelaez argues that it is the regular, routine nature of the practice that makes Just Brakes liable, as its acquiescence or even promotion of the practice indicates its implied approval of the breakfast run. *See Kennedy v. American Nat'l Ins. Co.*, 107 S.W.2d 364, 366 (Tex. 1937), *quoted in Soto v. Seven Seventeen HBE Corp.*, 52 S.W.3d 201, 205-06 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Even so, a "routine" occurrence still must be in *furtherance* of the employer's business. *See Kennedy*, 107 S.W.2d at 366.

In addition to furthering the employer's business, the third prong requires the act to accomplish the object for which the employee was employed. *Leadon*, 484 S.W.2d at 569; *Van Cleave*, 468 S.W.2d at 357. Paul was employed as a brake technician. The object for which he was employed was the servicing of automobiles. *See Leadon*, 484 S.W.2d at 569 (object for which employee employed was to assist lumberjack by, among other duties, keeping lookout for hanging or falling limbs). There is no evidence that Paul was employed for the object of feeding his co-workers, making sure that the office was well-staffed, or even obliging the personal requests of his manager. Therefore, in picking up breakfast for his manager and co-workers, Paul was not accomplishing the object for which he was hired.

Even making the reasonable inference in favor of Arbelaez that Paul was employed for the general object of "benefitting" Just Brakes' business, again I cannot agree that such "benefit" extends as far as employees being fed. Nor can such business purpose extend so far as one employee running personal errands for the entire office just so other employees can put in more time or not be

6

absent all at once. On the other hand, I can imagine a valid business benefit of, say, a law-firm manager's asking one legal assistant to go file several of the attorneys' motions at the courthouse to save the other assistants time and so that they are present to handle other matters that may arise. The difference is that the "errand" the assistant is asked to do is a "business" errand.

Arbelaez notes evidence indicating that Paul would usually be "reimbursed" for his gas money expended in picking up breakfast. It is not clear from the record whether Just Brakes reimbursed him or whether the other employees gave him gas money. Yet, reimbursement of an employee for mileage is not sufficient to create a fact question with regard to whether the employee was in the course and scope of his employment. *See Wilson v. H.E. Butt Grocery Co.*, 758 S.W.2d 904, 907 (Tex. App.—Corpus Christi 1988, no writ); *London v. Texas Power & Light Co.*, 620 S.W.2d 718, 720 (Tex. App.—Dallas 1981, no writ). Even making the inference in favor of Arbelaez that Just Brakes reimbursed Paul's gas money for the breakfast runs, Arbelaez still had the burden to create a fact issue on whether Paul was engaged in the course and scope of his employment by furthering the business and accomplishing the business purpose for which he was hired. Many employers graciously allow their employees to run personal errands occasionally while they are "on the clock." That is not sufficient to create a fact issue as to whether that personal errand was in the course and scope of employment.

Because picking up food for himself and his co-workers was not in furtherance of Just Brakes' business and did not accomplish any object for which he was employed, as a matter of law Paul was not acting in the course and scope of his employment with Just Brakes when he was

involved in the automobile collision with Arbelaez.  I would affirm the district court's summary judgment in favor of Just Brakes.  Accordingly, I respectfully dissent.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices Kidd and B. A. Smith

Filed:   May 20, 2004

8